IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

S.M. & S.H.,

      Plaintiffs,

vs.

                                  CASE NO.:
                                  DIVISION:

MELODY MOTEL, INC., a
Florida Corporation,

      Defendant.

_____/

## **COMPLAINT**

      Plaintiffs, S.M. and S.H., by and through her undersigned counsel, brings this Complaint for damages against Defendant, MELODY MOTEL, INC., a Florida Corporation, doing business as the Melody Motel, and state as follows:

### **INTRODUCTION**

1.     This is an action against a motel called the Melody Motel that knew or should have known based on a combination of well-documented indicators, that sex trafficking and other criminal activity was occurring, and would continue to occur, on its' motel premises as a result of their misfeasance and nonfeasance.

2.     The Melody Motel is a criminal entity masquerading as a motel.

3.     At all material times, the Melody Motel was owned, operated, managed, supervised, and in all ways, controlled by Melody Motel, Inc., which is the corporation responsible for the motel at which sex trafficking openly takes place.

4.     Plaintiffs S.M and S.H. were both young females who, at all material times, were addicted to drugs and were being trafficked by their respective traffickers, who were each well known to the employees at the Melody Motel.

1

5.    S.M. was trafficked at all material times hereto by Trafficker 1.

6.    S.H. was trafficked at all material times hereto by Traffickers 2 and 3.

7.    Each of the respective traffickers used physical violence, trauma bonding, isolation, and their drug addiction to cause Plaintiffs respectively to engage in commercial sex acts at the Melody Motel.

8.    Sufficient warning signs were present to put the Melody Motel on notice that S.M. and S.H. were each victims of sex trafficking.

9.    Trafficker 1 and the Melody Motel employees conspired to allow Trafficker 1 to continually run his criminal operation at the Melody Motel without hinderance and for the mutual profit of Trafficker 1 and the Melody Motel.  The Melody Motel accepted payments for rooms used to advertise, harbor, maintain, and provide S.M. for what they knew or should have known were forced and coerced commercial sex acts.

10.   Traffickers 2 and 3 and the Melody Motel employees conspired to allow Traffickers 2 and 3 to continually run their criminal operation at the Melody Motel without hinderance and for the mutual profit of Traffickers 2 and 3 and the Melody Motel.  The Melody Motel accepted payments for rooms used to advertise, harbor, maintain, and provide S.H. for what they knew or should have known were forced and coerced commercial sex acts.

11.   At all material times, the Melody Motel was engaged in the act of renting rooms and providing access to their property, causing the harboring of S.M. and S.H. by means they knew or should have known involved force and coercion for the purpose of commercial sexual acts.

12.   The Plaintiff brings this action for damages pursuant to the Trafficking Victims Protection Reauthorization Act 18 U.S.C. § 1595, against the Melody Motel who knowingly

2

benefited from a venture that they knew, or should have known, to be engaging in human trafficking in violation of 18 U.S.C. §§ 1591(a) and 1593A, and who enabled, harbored, facilitated or financially benefited, or any combination of the foregoing, from a sex trafficking venture in which Plaintiff was trafficked for sex, sexually exploited, and victimized in violation of the TVRPA.

## PARTIES, JURISDICTION AND VENUE

### A. Plaintiffs

13.    Plaintiff, S.M. is a resident of the State of Maine, and is *sui juris.*

14.    S.M. was found to be a victim of human trafficking by a Florida Court when she was granted a human trafficking expungement.

15.    Plaintiff, S.H., is a resident of the State of Iowa, and is *sui juris.*

16.    S.H. was found to be a victim of human trafficking by a Florida Court when she was granted a human trafficking expungement.

17.    Plaintiffs seek to file this action pseudonymously, using their initials instead of their actual names.

18.    Plaintiffs are using pseudonyms because of the highly personal nature of their victimization and because of the serious risk of harm to which they would be exposed by their former traffickers and their criminal associates if they brought this suit in their actual names.

19.    Plaintiffs' right to privacy and security outweigh the public interest in knowing their identification.

20.    Plaintiffs' legitimate privacy and security concerns also outweigh any prejudice potentially caused to Defendants by allowing Plaintiff to proceed pseudonymously.

3

### B. Defendants

21.   At all material times to this complaint, MELODY MOTEL INC., a Florida Corporation, was doing business as the Melody Motel, with its principal place of business 3842 S. Orange Blossom Trail, Orlando, Orange County, Florida.

22.   At all material times, the Melody Motel was licensed as a public lodging establishment in the State of Florida and was doing business as the same.

### C. Jurisdiction & Venue

23.   This Court has jurisdiction in that Plaintiff seeks monetary damages far exceeding the jurisdictional minimum of this Court of $50,000.00, exclusive of interest, costs, and attorney's fees.

24.   Venue properly lies in this judicial circuit in that the misconduct and other tortious acts that are the subject of this lawsuit were committed.  As such, venue is proper in Orange County, Florida.

## FACTUAL ALLEGATIONS

### A. The Melody Motel is an Innkeeper

25.   The Melody Motel is a public lodging establishment pursuant to Chapter 509 of the Florida Statutes and an "innkeeper."

26.   An innkeeper has a special relationship with his guests which gives rise to a duty to protect them against unreasonable risk of harm.

27.   An innkeeper's knowledge, as here, of prior criminal activity on or around the grounds of its motel imposes a duty to take adequate security precautions for the safety of the guests and their property.

28.   The relevant motel premise includes the front lobby, common areas, walkways,

stairwells, private rooms, designated parking area, and curtilage.

**B. Defendants Failed to Train their Employees or Implement Policies to Deter or Prevent Sex Trafficking**

29.    Multiple statutes and initiatives dating back to 1997, have informed, mandated, called for, and suggested hotels implement effective safeguards to identify and eliminate incentives to derive benefits from supporting acts that they know or should know violate human rights under Chapter 77 of the U.S. Code, including human trafficking that will foreseeably occur at or involve their premises and at times even their personnel.

30.    As with banking regulations that are geared to dismantle and counter terrorism networks, nationwide campaigns recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue, and took initiative as early as 1997 with the United Nations Blue Heart Campaign and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[1]  Despite the two campaigns releasing online resources and toolkits and making them publicly accessible to any entity concerned with human trafficking the hotel industry continued to look the other way while benefitting from what they knew or should have known were commercial sex acts of a minor or of an adult and induced by force, fraud, or coercion.

31.    Upon information and belief, despite ample education, the Melody Motel has failed to or delayed implementing internal policies that would identify trafficking related benefits and remove them from their bottom line.

32.    Consequently, S.M. and S.H. were trafficked utilizing the lodging facilities available at the Melody Motel.

---

[1] *DHS Blue Campaign Five Year Milestone*, DEPARTMENT OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone.

33.    S.M. and S.H. brings this civil action to remedy harm that was made possible by the Melody Motel and Candy Bell, who participated in a venture that knowingly benefitted from payments for use of their facilities and resources to recruit, entice, harbor, provide, obtain, advertise, maintain, patronize, and/or solicit S.M. and S.H., while employees and agents of the Melody Motel knew or should have known of the force, fraud, and/or coercion being used to induce S.M. and S.H. into commercial sex acts.

### C. The Melody Motel Created an Environment that Encouraged, Enabled and Promoted Criminal Activity, to include Human Trafficking

34.    Upon information and belief, at all relevant times to this complaint, the Melody Motel employed people to operate and manage the business.

35.    Upon information and belief, at all times relevant to this complaint, the Melody Motel did not train its staff on sex trafficking whatsoever.

36.    Upon information and belief, at all times relevant to this complaint, the Melody Motel did not develop or implement any procedures, protocols, or standards to detect and/or deter sex trafficking on its premise.

37.    Indeed, the Melody Motel did quite the opposite and engaged in the criminal venture with Plaintiffs' sex traffickers, both encouraging and profiting from the criminal activity.

38.    Candy Bell and the other individuals providing services at the Melody Motel all knew that the rooms were used for commercial sex.

39.    The rooms could be rented by the hour or by the day.

40.    The front desk had a bowl of condoms available for purchase.

41.    The Melody Motel had a reputation for being open for commercial sex, they would not ask questions, and they would not interfere with a trafficker' relationship and control of his victims.

42.     The rooms had a mirror on the ceiling above the bed, a common gimic used to enhance sexual arousal so that the individuals engaging in sexual activity can watch themselves doing so.

43.     The rooms have pornography on the television available to the occupants.  There are next to no regular television or movie channels available in the rooms.

44.     When a hotel guest staying in a room intended to take a sex buyer (a "date") back to her room to engage in sexual acts, it was expected and required that the hotel guest had to stop by the front office and pay extra to take the "date" back to their room ("date fee").  If this failed to happen, Candy Bell or one of the other employees would follow the guest to the room to demand payment for the "date's" presence.

45.     If a trafficker used violence to force and coerce his victims, the Melody Motel employees, agents and/or servants would attempt to quietly address the problem, catering to the trafficker, instead of immediately calling the police, and helping the victim.

46.     The problem was so apparent that the hotel reviews online even discussed the sexualized atmosphere, the prevalence of commercial sex, and the ongoing criminal activity:

  a.  **Yahoo! Local,** *Anonymous User* **(11/23/2010)** – "Awsome place!!: This place was awsome. They alow smoking and ho's!! Luv the mirror on the celing!! Porno was the best!! Will visit again after rehab!!!"

  b.  **Merchant Circle,** *Sean* **(08/09/2011)** – "Great place to pick up women. either the girls from OBT. Or just hang out threre's always someone around that wants to party!!! Really like the mirrors ont he ceiling, anf great selection of adult movies. Can't wait to go back."

47.     Upon information and belief, the Melody Motel was aware of the reviews, placing

7

them on notice of the problem, in addition to their own observations.

48.    The Melody Motel had one way in, and one way out, ensuring that the employees, agents and/or servants of the Melody Motel, including but not limited to Candy Bell, could see all the people and cars that entered and left the property.

49.    The Melody Motel had cameras on the front entrance so that all ingress and egress of the property was caught on film and was visible to the front office and the Melody Motel employees, agents and/or servants, including but not limited to, Candy Bell.

50.    The Melody Motel had cameras on all the common areas so that all the activity taking place on the property was caught on film and was visible to the front office the Melody Motel employees, agents and/or servants, including but not limited to, Candy Bell.

**D. The Sex Trafficking of S.M. at the Melody Motel**

51.    From February or March of 2013 and continuing through January of 2020, S.M. was a victim of sex trafficking.[2]

52.    S.M. lived at the Melody Motel with Trafficker 1 for approximately two to three months in the latter half of 2014.

53.    S.M. saw an average of five to six (5-6) "dates" per day while living at the Melody Motel.

54.    Each "date" was admitted to the property for a short visit to engage in commercial sex acts with S.M. after paying the Melody Motel employees, agents and/or servants, including but not limited to, Candy Bell the "date fee."  The Melody Motel employees, agents and/or servants, including but not limited to Candy Bell, witnessed the frequency of the "dates" coming and leaving the property, as well as their purpose in being there – commercial sex

---

[2] S.M. has been found by a Florida Court to be a victim of human trafficking.

induced by force, fraud, or coercion.

55.    To find buyers, Trafficker 1 would force and coerce S.M. to "walk the trail" directly in front of the Melody Motel.

56.    When a "date" would stop to purchase her, S.M. would have the "date" pull into the Melody Motel parking lot.

57.    S.M. would then walk through the front office with the "date" to pay the Melody Motel employees, agents and/or servants, including but not limited to, Candy Bell the "date fee" in her scantily clad attire, would walk them to her room, engage in commercial sex, and then the "date" would leave.

58.    For each "date," S.M. would collect the money and at the conclusion of the "date" or shortly thereafter, S.M. would walk over to Trafficker 1's location and hand him the money. This often happened in the parking lot of the Melody Motel, which was on camera and visible in the front office.

59.    If Trafficker 1 left the property, the Melody Motel employees, agents and/or servants including but not limited to Candy Bell and Marvin Bell, would notify Trafficker 1 how many "dates" S.M. had while he was gone.  This allowed Trafficker 1 to ensure that S.M. did not hide or withhold any money from him.

60.    S.M. was expected to earn a set amount of money.  Trafficker 1 used S.M.'s drug addiction as a form of coercion and mandated that she earn enough money for him before he would give her the drug dose that would prevent her from becoming sick.

61.    Trafficker 1 frequently referred to S.M. as his "bitch" and other derogatory names that are common in sex trafficking.  He called her this in front of the Melody Motel the Melody Motel employees, agents and/or servants.

62.     Trafficker 1 was extremely violent to S.M. and beat her frequently at the Melody Motel to ensure her compliance with his demands, including engaging in commercial sex acts for his profit.

63.     On several occasions, Trafficker 1 would beat S.M. severely and S.M. would scream for help in front of the Melody Motel employees, agents and/or servants, who did nothing.

64.     On several occasions, S.M. had visible bruises on her face that were visible to the Melody Motel employees, agents and/or servants, including but not limited to Candy Bell.

65.     As a direct and proximate result of Defendants' actions, S.M. was seriously harmed including, without limitation, physical, psychological, financial, and reputational harm.

**E. Equitable Tolling of S.M.'s Claims**

66.     S.M. was prevented from pursuing her claims until she was no longer a victim.

67.     S.M. continued to be a victim of sex trafficking at the hands of Trafficker 1 and her victimization continued until she was finally able to escape him years later in 2020.

68.     Trafficker 1 was arrested and subsequently charged with human trafficking of S.M. by the Office of Statewide Prosecution in Orange County, Florida in 2020.  He remained in custody while his trial was pending under the *Arthur* standard.  He was convicted and sent to the Department of Corrections in 2023.

69.     Traffickers use force and coercion to maintain full and total control over their victims and do not allow their victims the luxury of independent thought, or anything less than total obedience and submission.   S.M. was no exception and disobedience resulted in extraordinary violence and coercion.

70.     While S.M. was a victim of trafficking, reporting what occurred, speaking to a lawyer, or pursuing a lawsuit were not possible, as her trafficker would have killed her or physically

harmed her for even considering such a thought.

71.    S.M. was not able to file a claim until 2020 when Trafficker 1 was incarcerated and his control over her began to wane.

**F.  The Sex Trafficking of S.H. at the Melody Motel**

72.    Starting in 2012 and continuing through 2015, S.H. was a victim of sex trafficking.[3]

73.    S.H. lived at the Melody Motel with Traffickers 2 and 3 for several months in 2013, and then continued to come back frequently and would live there for a few weeks at a time through June of 2014.

74.    Trafficker 2 and Trafficker 3 worked together in a common criminal venture.

75.    S.H. saw an average of approximately ten (10) "dates" per day while staying at the Melody Motel.

76.    Sometimes, S.H.'s traffickers would be using their main room, so S.H. would rent a second room for an hour.  The Melody Motel employees, agents and/or servants, including but not limited to, Candy Bell, would rent S.H. the room.

77.    Upon renting the room for an hour to S.H., the Melody Motel employees, agents and/or servants, including but not limited to Candy Bell, would encourage S.H. to buy a condom.

78.    Whenever S.H. had a "date" that she had to engage in commercial sex with, she would go to the front desk to "check in" with the male client and make sure there was a clean room available.

79.    Each "date" was admitted to the property for a short visit with S.H. after paying the Melody Motel employees, agents and/or servants, including but not limited to Candy Bell,

---

[3] S.H. has been verified by a Florida Court to be a victim of human trafficking.

the "date fee."

80.     The Melody Motel employees, agents and/or servants, including but not limited to Candy Bell, would tell S.H. if she had a room available and the price of the "date fee" to be allowed to bring the "date" back to her room.

81.     S.H. would go get the "date fee" from Trafficker 2 and/or 3 – who were usually sitting in their vehicle in the parking lot or were in the room – return to the front office, and pay the Melody Motel employees, agents and/or servants, including but not limited to Candy Bell.

82.     The Melody Motel employees, agents and/or servants, including but not limited to Candy Bell and Marvin Bell, witnessed the frequency of the "dates" coming and leaving the property, as well as their purpose in being there – commercial sex induced by force, fraud, or coercion.

83.     To find buyers, Trafficker 1 would force and coerce S.H. to "walk the trail" directly in front of the Melody Motel.

84.     When a "date" would stop to purchase her, S.H. would have the "date" pull into the Melody Motel parking lot.

85.     S.H. would then walk through the front office with the "date" to pay the Melody Motel employees, agents and/or servants, including but not limited to, Candy Bell the "date fee" in her scantily clad attire, would walk them to her room, engage in commercial sex, and then the "date" would leave.

86.     For each "date," S.H. would collect the money and at the conclusion of the "date" or shortly thereafter, S.H. would walk over to Trafficker 2 or 3's location and hand him the money.  This often happened in the parking lot of the Melody Motel, which was on camera and visible in the front office.

87.    If Trafficker 2 or 3 left the property, the Melody Motel employees, agents and/or servants including but not limited to Candy Bell and Marvin Bell, would notify Trafficker 2 or 3 how many "dates" S.H. had while he was gone.  This allowed Trafficker 2 and 3 to ensure that S.H. did not hide or withhold any money from him.

88.    S.H. was expected to earn a set amount of money.  Trafficker 2 and 3 used S.H.'s drug addiction as a form of coercion and mandated that she earn enough money for him before he would give her the drug dose that would prevent her from becoming sick.

89.    Trafficker 3 frequently referred to S.H. as his "bitch" and other derogatory names that are common in sex trafficking in front of the Melody Motel employees, agents and/or servants including but not limited to Candy Bell.

90.    Trafficker 2 was violent to S.H. and beat her several times at the Melody Motel to ensure her compliance with his demands, including engaging in commercial sex acts for his profit.

91.    The Melody Motel employees, agents and/or servants including but not limited to Candy Bell and Marvin Bell, observed S.H. being battered by her Traffickers and did not interfere with or stop the attack, did not call the police, and did not help S.H.

92.    The Melody Motel employees, agents and/or servants including but not limited to Candy Bell visibly observed bruises and blood on S.H.

93.    On multiple other occasions, Trafficker 2 would beat S.H.  Each time, Trafficker 2 would begin screaming and yelling at S.H. in the common area.

94.    When Trafficker 2 became loud, the Melody Motel employees, agents and/or servants including but not limited to Candy Bell, would usually ask him to keep it quieter.

95.    In November of 2013, Trafficker 2 went to jail, where he ended up serving seven (7)

months in jail.

96.    While Trafficker 2 was incarcerated, Trafficker 3 took over as the lead trafficker overseeing S.H.'s victimization.

97.    In June of 2014, Trafficker 3 was arrested.   He was ultimately prosecuted and sentenced to life in prison.

98.    At all times material hereto, S.H. lived in constant fear that Traffickers 2 and/or 3 would harm or kill her and obeyed them to avoid being harmed.

99.    Trafficker 2 and/or 3 forced and coerced S.H. to engage in commercial sex acts as part of a continual and ongoing sex trafficking venture.

100.   As a direct and proximate result of Defendant's actions, S.H. was seriously harmed including, without limitation, physical, psychological, financial, and reputational harm.

   **G. Equitable Tolling of S.H.'s Claims**

101.   S.H. was prevented from pursuing her claims until she was no longer a victim.

102.   S.H. continued to be a victim of sex trafficking at the hands of Traffickers 2 and 3 and her victimization continued until she was finally able to escape in 2015.

103.   In November of 2013, Trafficker 2 was arrested, remained in custody, and served a sentence of approximately seven (7) months in jail.

104.   While Trafficker 2 was incarcerated, Trafficker 3 was in control of S.H.

105.   In June of 2014, Trafficker 3 was arrested.   He was ultimately prosecuted and sentenced to life in prison.

106.   Traffickers use force and coercion to maintain full and total control over their victims and do not allow their victims the luxury of independent thought, or anything less than total obedience  and  submission.    S.H.  was  no  exception  and  disobedience  resulted  in

14

extraordinary violence and coercion.

107.    While S.H. was a victim of trafficking, reporting what occurred, speaking to a lawyer, or pursuing a lawsuit were not possible, as her trafficker would have killed her or physically harmed her for even considering such a thought.

108.    S.H. was not able to file a claim until 2015 when she finally got free of her traffickers.

**COUNT I**
**BENEFITING FROM A SEX TRAFFICKING VENTURE IN VIOLATION OF THE**
**TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT,**
**18 U.S.C. §§ 1591(A)(2) AND 1595**
*(S.M. v. The Melody Motel)*

109.    Plaintiff S.M. realleges and incorporates by reference the allegations contained in paragraphs 1-108, as if fully set forth in this Count.

110.    Defendants both knowingly used the instrumentalities and channels of interstate and foreign commerce to facilitate violations of 18 U.S.C. §§ 1591(a)(2) and 1595(a), occurring within the territorial jurisdiction of the United States.

111.    Defendants' conduct was in or affected interstate and/or foreign commerce.

112.    Plaintiff S.M. is a verified human trafficking victim.

113.    Trafficker 1 recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, and/or solicited S.M.

114.    Plaintiff S.M. was engaging in commercial sex acts at the Melody Motel through force, threats of force, and coercion.

115.    Trafficker 1, Plaintiff's sex trafficker, physically beat S.M. at the Melody Motel to cause her to engage in commercial sex acts.

116.    Trafficker 1 used S.M.'s drug addiction and the threat of causing her harm by experiencing withdrawal symptoms to threaten and coerce her to engage in commercial sex

acts.

117.   All money made by S.M. from these commercial sex acts was given to her traffickers.

118.   Trafficker 1 and MELODY MOTEL, INC. took part in a common undertaking or enterprise involving both risk and potential profit wherein Trafficker 1 ran a criminal sex trafficking operation out of the Melody Motel and both financially benefited from the same.

119.   Defendant, the Melody Motel received something of value by making money from the room rentals, condom sales, and "date fee" that were being paid.

120.   Trafficker 1 received something of value in that they received the proceeds of S.M.'s commercial sex acts, as well as they received a "safe" venue to operate their criminal venture without the risk of the Melody Motel calling the police.

121.   S.M. received drugs so that she did not become sick from withdrawal symptoms as compensation for engaging in sex acts.

122.   Defendant knowingly benefited, or should have known that it was benefiting, from assisting, supporting, or facilitating a violation of 1591(a)(1).

123.   The Melody Motel accepted "date fees" to get their "cut" of the profit from the commercial sex acts, they did not interfere when Trafficker 1 was beating S.M., they rented rooms as needed for commercial sex, and they did not call the police on Trafficker 1 so as not to get in the way of their "business," and continued to reap the profits of this criminal venture.

124.   Defendant's conduct has caused S.M. serious harm including, without limitation, physical, psychological, financial, and reputational harm.

   WHEREFORE, Plaintiff S.M. demands judgment from Defendant, MELODY

MOTEL, INC, for all available damages, attorneys fees, and costs of this action.  Plaintiff,

S.M., further demands a jury trial on all issues.

### COUNT II
**BENEFITING FROM A SEX TRAFFICKING VENTURE IN VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT, 18 U.S.C. §§ 1591(A)(2) AND 1595**
*(S.H. v. The Melody Motel)*

125.    Plaintiff S.H. realleges and incorporates by reference the allegations contained in

paragraphs 1-108, as if fully set forth in this Count.

126.    Defendant knowingly used the instrumentalities and channels of interstate and

foreign commerce to facilitate violations of 18 U.S.C. §§ 1591(a)(2) and 1595(a), occurring

within the territorial jurisdiction of the United States.

127.    Defendant's conduct was in or affected interstate and/or foreign commerce.

128.    Plaintiff S.H. is a verified human trafficking victim.

129.  Traffickers 2 and 3 recruited, enticed, harbored, transported, provided, obtained,

advertised, maintained, and/or solicited S.H.

130.    Plaintiff S.H. was engaging in commercial sex acts at The Melody Motel through

force, threats of force, and coercion.

131.    Trafficker 2, one of Plaintiff's sex traffickers, physically beat S.H. at The Melody

Motel until she was bleeding on the floor and covered in bruises as a show of force.

Trafficker 2 physically beat S.H. on numerous other occasions as additional force to cause

her to engage in commercial sex acts.

132.    Traffickers 2 and/or 3 used S.H.'s drug addiction and the threat of causing her harm

by becoming "dope sick" to threaten and coerce her to engage in commercial sex acts.

133.    All money made by S.H. from these commercial sex acts was given to her traffickers.

17

134. Trafficker 2, Trafficker 3, and MELODY MOTEL, INC. took part in a common undertaking or enterprise involving both risk and potential profit wherein Trafficker ran a criminal sex trafficking and drug dealing operation out of New Start and all three financially benefited from the same.

135.   Defendant the Melody Motel received something of value by making money from the room rentals, condom sales, and "date fee" that were being paid.

136.   Traffickers 2 and/or 3 received something of value in that they received the proceeds of S.H.'s commercial sex acts, as well as they received a "safe" venue to operate their criminal venture without the risk of The Melody Motel calling the police.

137.   S.M. received drugs so that she did not become sick from withdrawal symptoms as compensation for engaging in sex acts.

138.   Defendant knowingly benefited, or should have known that it was benefiting, from assisting, supporting, or facilitating a violation of 1591(a)(1).

139.   The Melody Motel accepted "date fees" to get their "cut" of the profit from the commercial sex acts, they did not interfere when a Trafficker 2 was beating S.H., they rented rooms as needed for commercial sex, and they did not call the police on Traffickers 2 or 3 so as not to get in the way of their "business," and continued to reap the profits of this criminal venture.

140.   Defendant's conduct has caused S.H. serious harm including, without limitation, physical, psychological, financial, and reputational harm.

WHEREFORE, Plaintiff S.H. demands judgment from Defendant, MELODY MOTEL, INC., for all available damages and costs of this action.  Plaintiff, S.H., further demands a jury trial on all issues.

## COUNT III
### FLORIDA CIVIL REMEDIES FOR CRIMINAL PRACTICES
### FLORIDA STATUTE § 772.104
*(S.M. v. The Melody Motel)*

141.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-108, as if fully set forth in this Count.

142.    Defendant MELODY MOTEL, INC. and Trafficker 1, with criminal intent, conspired to, endeavored to, and/or received proceeds from the sex trafficking of S.M., directly or indirectly, from a pattern of criminal activity.

143.    Defendant MELODY MOTEL, INC. and Trafficker 1, through a pattern of criminal sex trafficking and drug distribution activity, conspired to, endeavored to, or did actually acquire or maintain, directly or indirectly, control of the enterprise.

144.    Defendant MELODY MOTEL, INC. and Trafficker 1 acted with the intent to establish and/or operate an enterprise.

145.    Defendant MELODY MOTEL, INC. and Trafficker 1 are employed by and/or associated with, the sex trafficking enterprise to conduct or participate, directly or indirectly, in the enterprise through a pattern of criminal activity.

146.    As a direct and proximate cause of the foregoing, Plaintiff S.M. was injured by Defendant's actions and has suffered psychological, emotional, and physical injuries, emotional distress, mental anguish, pain and suffering and the loss of enjoyment of life.

    WHEREFORE, Plaintiff S.M. demands judgment from Defendant, MELODY MOTEL, INC., for all available damages and costs of this action.  Plaintiff, S.M., further demands a jury trial on all issues.

<u>**COUNT IV**</u>
**FLORIDA CIVIL REMEDIES FOR CRIMINAL PRACTICES**
**FLORIDA STATUTE § 772.104**
*(S.H. v. The Melody Motel)*

147.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-108, as if fully set forth in this Count.

148.    Defendant MELODY MOTEL, INC. and Trafficker 2 and Trafficker 3, with criminal intent, conspired to, endeavored to, and/or received proceeds from the sex trafficking of S.H., directly or indirectly, from a pattern of criminal activity.

149.    Defendant MELODY MOTEL, INC., Trafficker 2 and Trafficker 3, through a pattern of criminal sex trafficking and drug distribution activity, conspired to, endeavored to, or did actually acquire or maintain, directly or indirectly, control of the enterprise.

150.    Defendant MELODY MOTEL, INC., Trafficker 2 and Trafficker 3 acted with the intent to establish and/or operate an enterprise.

151.    Defendant MELODY MOTEL, INC. and Trafficker 2 and Trafficker 3 are employed by and/or associated with, the sex trafficking enterprise to conduct or participate, directly or indirectly, in the enterprise through a pattern of criminal activity.

152.    As a direct and proximate cause of the foregoing, Plaintiff S.H. was injured by Defendant's actions and has suffered psychological, emotional, and physical injuries, emotional distress, mental anguish, pain and suffering and the loss of enjoyment of life.

        WHEREFORE, Plaintiff S.H. demands judgment from Defendant, MELODY MOTEL, INC., for all available damages and costs of this action.  Plaintiff, S.H., further demands a jury trial on all issues.

## COUNT V
## NEGLIGENT SUPERVISION AND RETENTION
*(S.M. v. The Melody Motel)*

153.    Plaintiff S.M. realleges and incorporates by reference the allegations contained in paragraphs 1-108, as if fully set forth in this Count.

154.    At all times material hereto, Plaintiff S.M. was a business invitee or otherwise lawfully present upon said premises.

155.    MELODY MOTEL, INC.'s agents, employees and/or servants negligently authorized criminals to rent rooms for sex trafficking, creating a foreseeable risk that S.M. would be engaging in commercial sex as a result of force, fraud, or coercion.

156.    MELODY MOTEL, INC.'s agents, employees and/or servants failed to either identify and/or report the sex trafficking and foreseeable harm to S.M.

157.    MELODY MOTEL, INC.'s agents, employees and/or servants failed to refuse continued lodging services to sex traffickers.

158.    MELODY MOTEL, INC. was in control of instructing, training and supervising said agents, employees and/or servants, as well as the decisions to terminate said agents, employees and/or servants.

159.    At all times, MELODY MOTEL, INC. was negligent in its supervision and termination decisions, and the said negligent decisions caused S.M. to be injured.

160.    It was foreseeable that MELODY MOTEL, INC.'s acts and omissions increased the risk that these illegal acts would regularly occur on its premises and would cause harm to S.M.

161.    But for the negligence and omissions of MELODY MOTEL, INC., the criminal conduct, including sex trafficking at all times material to this Complaint, S.M. would not

have been sex trafficked at this location.

162.    Accordingly, MELODY MOTEL, INC. is liable for all harmful results that are the normal incidents of, and within the increased risk caused by their negligent acts and omissions.

163.    As a direct and proximate result of the acts and omissions of MELODY MOTEL, INC., by and through their agents, servants, franchisees and/or employees, Plaintiff S.M. was injured by Defendant's actions and has suffered psychological, emotional, and physical injuries, emotional distress, mental anguish, pain and suffering and the loss of enjoyment of life.

WHEREFORE, Plaintiff S.M. demands judgment from Defendant, MELODY MOTEL, INC., for all available damages and costs of this action.  Plaintiff, S.M., further demands a jury trial on all issues.

## COUNT VI
## NEGLIGENT SUPERVISION AND RETENTION
*(S.H. v. The Melody Motel)*

164.    Plaintiff S.H. realleges and incorporates by reference the allegations contained in paragraphs 1-108, as if fully set forth in this Count.

165.    At all times material hereto, Plaintiff S.H. was a business invitee or otherwise lawfully present upon said premises.

166.    MELODY MOTEL, INC.'s agents, employees and/or servants negligently authorized criminals to rent rooms for sex trafficking, creating a foreseeable risk that S.H. would be engaging in commercial sex as a result of force, fraud, or coercion.

167.    MELODY MOTEL, INC.'s agents, employees and/or servants failed to either identify and/or report the sex trafficking and foreseeable harm to S.H.

168.   MELODY MOTEL, INC.'s agents, employees and/or servants failed to refuse continued lodging services to sex traffickers.

169.   MELODY MOTEL, INC. was in control of instructing, training and supervising said agents, employees and/or servants, as well as the decisions to terminate said agents, employees and/or servants.

170.   At all times, MELODY MOTEL, INC. was negligent in its supervision and termination decisions, and the said negligent decisions caused S.H. to be injured.

171.   It was foreseeable that the MELODY MOTEL, INC.'s acts and omissions increased the risk that these illegal acts would regularly occur on its premises and would cause harm to S.H.

172.   But for the negligence and omissions of MELODY MOTEL, INC., the criminal conduct, including sex trafficking at all times material to this Complaint, S.H. would not have been sex trafficked at this location.

173.   Accordingly, MELODY MOTEL, INC. is liable for all harmful results that are the normal incidents of, and within the increased risk caused by their negligent acts and omissions.

174.   As a direct and proximate result of the acts and omissions of MELODY MOTEL, INC., by and through their agents, servants, franchisees and/or employees, Plaintiff S.H. was injured by Defendant's actions and has suffered psychological, emotional, and physical injuries, emotional distress, mental anguish, pain and suffering and the loss of enjoyment of life.

WHEREFORE, Plaintiff S.H. demands judgment from Defendant, MELODY MOTEL, INC, for all available damages and costs of this action.  Plaintiff, S.H., further

demands a jury trial on all issues.

## COUNT VII
## PREMISES LIABILITY
### *(S.M. v. The Melody Motel)*

175.    Plaintiff S.M. realleges and incorporates by reference the allegations contained in paragraphs 1-108, as if fully set forth in this Count.

176.    At all times material to this complaint, the Plaintiff S.M., while an invitee or otherwise lawfully present upon the premises of the Melody Motel, did sustain injuries as a result of the MELODY MOTEL, INC.'s actions, their respective patrons and the criminal activity carried on at the Melody Motel.

177.    MELODY MOTEL, INC., by and through its agents, employees and/or servants, owed a duty to maintain the subject premises in a reasonably safe condition and free from conditions that would render it dangerous and unsafe for Plaintiff S.M.

178.    MELODY MOTEL, INC., by and through its agents, employees and/or servants, owed a duty to exercise reasonable care to protect Plaintiff S.M., by inspection or other affirmative acts, from the danger of any reasonably foreseeable harm occurring from the reasonably foreseeable use of the premises by sex traffickers.

179.    MELODY MOTEL, INC., by and through its agents, servants and/or employees owed a duty to exercise reasonable care to keep its motel guests safe by implementing and enforcing security measures and proper protocols.

180.    MELODY MOTEL, INC., by and through its agents, servants and/or employees, owed a duty to safeguard S.M. against criminal conduct that the Melody Motel could reasonably foresee happening on their business premises.

181.    MELODY MOTEL, INC., by and through their agents, servants and/or

employees, owed a duty to maintain their entire hotel premises in a hospitable, safe and reasonable manner.

182. MELODY MOTEL, INC. had actual or constructive knowledge of prior similar sex trafficking incidents carried out at this property.

183. MELODY MOTEL, INC. knew or should have known, in light of all the attendant circumstances stated herein, that the risk of such criminal conduct taking place at the Melody Motel would be unreasonably high without MELODY MOTEL, INC. taking appropriate security precautions against such conduct as well as protocols for reporting and refusing such conduct.

184. MELODY MOTEL, INC. had actual knowledge of the dangerous condition Plaintiff S.M. was in at the Melody Motel, or in the alternative, that the dangerous condition existed for a sufficient length of time that MELODY MOTEL, INC. should have exercised ordinary care, should have known of the conditions, thereby had constructive knowledge of Plaintiff S.M.'s peril; and/or that the condition occurred with regularity at the Melody Motel and was therefore foreseeable; and/or MELODY MOTEL, INC. should have known of the dangerous condition or peril by conducting proper and reasonable inspection of the hotel premises and/or guests' conduct.

185. Because sex trafficking and associated conduct was foreseeable, MELODY MOTEL, INC. had a duty to take adequate measures at the Melody Motel to protect their guests, including Plaintiff S.M., from being victims of continued sex trafficking.

186. At all times material, MELODY MOTEL, INC., by and through their agents, servants, and/or employees, created and/or allowed the dangerous condition to exist at the Melody Motel and/or failed to keep the Plaintiff S.M. safe while she was on the

premises of the Melody Motel.

187.   MELODY MOTEL, INC. could have taken any number of corrective measures to make the dangerous conditions at the Melody Motel ceased, including but not limited to not accepting payments of any kind for criminal activity, not renting rooms to known criminals or for criminal activity, not setting up the rooms to promote commercial sexual activity, not allowing buyers of sex to enter the premise,  providing training regarding human trafficking awareness to employees, to include for how to identify individuals who may be traffickers or their victims, establishing, implementing and/or enforcing protocols on reporting suspected human trafficking and responding to situations involving human trafficking; and establishing, implementing and/or enforcing protocols on how to handle general emergency situations or manage criminal risks.

188.   In failing to take any measures to report and remove the dangerous condition from the premises, MELODY MOTEL, INC. failed to take reasonable care to protect Plaintiff S.M., their hotel guest.

189.   By opening allowing Trafficker 1 to have his victim, S.M. "walk the trail" to solicit clients directly in front of the Melody Motel, demanding payment of the "date fee" for each sex buyer that entered the premise, and allowing Trafficker 1 to openly and freely beat S.M., MELODY MOTEL, INC. encouraged the use of the premise for criminal activity such as sex trafficking.

190.   Accordingly, MELODY MOTEL, INC.'s actions and failures allowed the sex trafficking culture to flourish and the premise became a sanctuary for such activity.

191.   MELODY MOTEL, INC., by and through its agents, employees and/or servants breached its respective duty owed to the Plaintiff S.M., and was negligent by:

26

    a. Creating a dangerous condition;

    b. Failing to correct the aforementioned dangerous condition;

    c. Failing to report and refuse renting to the traffickers;

    d. Failing to properly and adequately maintain the premises in a reasonably safe condition;

    e. Failing to monitor and prevent their staff and agents from conducting and engaging in illegal sex and drug trafficking;

    f. Failing to have security measures to protect the Plaintiff;

    g. Failing to provide training regarding human trafficking awareness to employees and staff,

    h. Failing to provide training to employees on how to identify individuals who may be traffickers or their victims of trafficking;

    i. Failing to establish, implement or enforce protocols on reporting suspected human trafficking and responding to situations involving human trafficking;

    j. Failing to establish, implement or enforce protocols on how to handle general emergency situations or manage criminal risks; and

    k. Failing to take affirmative steps to investigate suspicious conduct and forbid criminal conduct.

192. As a direct and proximate cause of the foregoing, S.M. was injured by Defendant's actions and has suffered psychological, emotional, and physical injuries, emotional distress, mental anguish, pain and suffering and the loss of enjoyment of life.

WHEREFORE, Plaintiff S.M. demands judgment from Defendant, MELODY MOTEL, INC., for all available damages and costs of this action. Plaintiff, S.M., further

27

demands a jury trial on all issues.

## COUNT VIII
## PREMISES LIABILITY
### (S.H. v. The Melody Motel)

193.    Plaintiff S.H. realleges and incorporates by reference the allegations contained in

paragraphs 1-108, as if fully set forth in this Count.

194.    At all times material to this complaint, the Plaintiff S.H., while an invitee or

otherwise lawfully present upon the premises of the Melody Motel, did sustain injuries as

a result of MELODY MOTEL, INC.'s actions, their respective patrons and the criminal

activity carried on at the Melody Motel.

195.    MELODY MOTEL, INC., by and through its agents, employees and/or servants,

owed a duty to maintain the subject premises in a reasonably safe condition and free from

conditions that would render it dangerous and unsafe for Plaintiff S.H.

196.    MELODY MOTEL, INC., by and through its agents, employees and/or servants,

owed a duty to exercise reasonable care to protect Plaintiff S.H., by inspection or other

affirmative acts, from the danger of any reasonably foreseeable harm occurring from the

reasonably foreseeable use of the premises by sex traffickers.

197.    MELODY MOTEL, INC., by and through its agents, servants and/or employees

owed a duty to exercise reasonable care to keep its hotel guests safe by implementing and

enforcing security measures and proper protocols.

198.    MELODY MOTEL, INC., by and through its agents, servants and/or employees,

owed a duty to safeguard S.H. against criminal conduct that MELODY MOTEL, INC.

could reasonably foresee happening on their business premises.

199.    MELODY  MOTEL,  INC.,  by  and  through  their  agents,  servants  and/or

employees, owed a duty to maintain their entire hotel premises in a hospitable, safe and reasonable manner.

200.    MELODY MOTEL, INC. had actual or constructive knowledge of prior similar sex trafficking incidents carried out at this property.

201.    MELODY MOTEL, INC. knew or should have known, in light of all the attendant circumstances stated herein, that the risk of such criminal conduct taking place at the Melody Motel would be unreasonably high without MELODY MOTEL, INC. taking appropriate security precautions against such conduct as well as protocols for reporting and refusing such conduct.

202.    MELODY MOTEL, INC. had actual knowledge of the dangerous condition Plaintiff S.H. was in at the Melody Motel, or in the alternative, that the dangerous condition existed for a sufficient length of time that MELODY MOTEL, INC. should have exercised ordinary care, should have known of the conditions, thereby had constructive knowledge of Plaintiff S.H.'s peril; and/or that the condition occurred with regularity at the Melody Motel and was therefore foreseeable; and/or MELODY MOTEL, INC. should have known of the dangerous condition or peril by conducting proper and reasonable inspection of the hotel premises and/or guests' conduct.

203.    Because sex trafficking and associated conduct was foreseeable, MELODY MOTEL, INC. had a duty to take adequate measures at the Melody Motel to protect their guests, including Plaintiff S.H., from being victims of continued sex trafficking.

204.    At all times material, MELODY MOTEL, INC., by and through their agents, servants, and/or employees, created and/or allowed the dangerous condition to exist at the Melody Motel and/or failed to keep the Plaintiff S.H. safe while she was on the

premises of the Melody Motel.

205.    MELODY MOTEL, INC. could have taken any number of corrective measures to make the dangerous conditions at the Melody Motel ceased, including but not limited to not accepting payments of any kind for criminal activity, not renting rooms to known criminals or for criminal activity, not setting up the rooms to promote commercial sexual activity, not allowing buyers of sex to enter the premise,  providing training regarding human trafficking awareness to employees, to include for how to identify individuals who may be traffickers or their victims, establishing, implementing and/or enforcing protocols on reporting suspected human trafficking and responding to situations involving human trafficking; and establishing, implementing and/or enforcing protocols on how to handle general emergency situations or manage criminal risks.

206.    In failing to take any measures to report and remove the dangerous condition from the premises, MELODY MOTEL, INC. failed to take reasonable care to protect Plaintiff S.H., their hotel guest.

207.    By opening allowing Traffickers 2 & 3 to have their victim, S.H. "walk the trail" to solicit clients directly in front of the Melody Motel, demanding payment of the "date fee" for each sex buyer that entered the premise, and allowing Traffickers 2 & 3 to openly and freely beat S.H., MELODY MOTEL, INC. encouraged the use of the premise for criminal activity such as sex trafficking.

208.    Accordingly, MELODY MOTEL, INC.'s actions and failures allowed the sex trafficking culture to flourish and the premise became a sanctuary for such activity.

209.    MELODY MOTEL, INC., by and through its agents, employees and/or servants breached its respective duty owed to the Plaintiff S.H., and was negligent by:

30

   a.  Creating a dangerous condition;

   b.  Failing to correct the aforementioned dangerous condition;

   c.  Failing to report and refuse renting to the traffickers;

   d.  Failing to properly and adequately maintain the premises in a reasonably safe condition;

   e.  Failing to monitor and prevent their staff and agents from conducting and engaging in illegal sex and drug trafficking;

   f.  Failing to have security measures to protect the Plaintiff;

   g.  Failing to provide training regarding human trafficking awareness to employees and staff,

   h.  Failing to provide training to employees on how to identify individuals who may be traffickers or their victims of trafficking;

   i.  Failing to establish, implement or enforce protocols on reporting suspected human trafficking and responding to situations involving human trafficking;

   j.  Failing to establish, implement or enforce protocols on how to handle general emergency situations or manage criminal risks; and

   k.  Failing to take affirmative steps to investigate suspicious conduct and forbid criminal conduct.

210.   As a direct and proximate cause of the foregoing, S.H. was injured by Defendant's actions and has suffered psychological, emotional, and physical injuries, emotional distress, mental anguish, pain and suffering and the loss of enjoyment of life.

   WHEREFORE, Plaintiff S.H. demands judgment from Defendant, MELODY MOTEL, INC, for all available damages and costs of this action.  Plaintiff, S.H., further

demands a jury trial on all issues.

## COUNT IX
## VICARIOUS LIABILITY
### *(S.M. v. The Melody Motel)*

211.    Plaintiff S.M. realleges and incorporates by reference the allegations contained in paragraphs 1-108, as if fully set forth in this Count.

212.    At all times material to this complaint, the Plaintiff S.M., while an invitee or otherwise lawfully present upon the premises of the Melody Motel, did sustain injuries as a result of MELODY MOTEL, INC.'s actions, their respective patrons and the criminal activity carried on at the Melody Motel.

213.    MELODY MOTEL, INC. is vicariously liable for the negligent acts and omissions of its agents, servants, representatives, employees, and/or contractors.

214.    At all times material hereto, Defendant, MELODY MOTEL, INC., employed Candy Bell.

215.    At all times material hereto, Defendant, MELODY MOTEL, INC., employed Marvin Bell.

216.    MELODY MOTEL, INC., by and through its agents, employees and/or servants, owed a duty to maintain the subject premises in a reasonably safe condition and free from conditions that would render it dangerous and unsafe for Plaintiff S.M.

217.    MELODY MOTEL, INC., by and through its agents, employees and/or servants, owed a duty to exercise reasonable care to protect Plaintiff S.M., by inspection or other affirmative acts, from the danger of any reasonably foreseeable harm occurring from the reasonably foreseeable use of the premises by sex traffickers.

218.   MELODY MOTEL, INC., by and through its agents, servants and/or employees owed a duty to exercise reasonable care to keep its motel guests safe by implementing and enforcing security measures and proper protocols.

219.   MELODY MOTEL, INC., by and through its agents, servants and/or employees, owed a duty to safeguard S.M. against criminal conduct that the Melody Motel could reasonably foresee happening on their business premises.

220.   MELODY MOTEL, INC., by and through their agents, servants and/or employees, owed a duty to maintain their entire hotel premises in a hospitable, safe and reasonable manner.

221.   MELODY MOTEL, INC. had actual or constructive knowledge of prior similar sex trafficking incidents carried out at this property.

222.   MELODY MOTEL, INC. knew or should have known, in light of all the attendant circumstances stated herein, that the risk of such criminal conduct taking place at the Melody Motel would be unreasonably high without MELODY MOTEL, INC. taking appropriate security precautions against such conduct as well as protocols for reporting and refusing such conduct.

223.   MELODY MOTEL, INC. had actual knowledge of the dangerous condition Plaintiff S.M. was in at the Melody Motel, or in the alternative, that the dangerous condition existed for a sufficient length of time that MELODY MOTEL, INC. should have exercised ordinary care, should have known of the conditions, thereby had constructive knowledge of Plaintiff S.M.'s peril; and/or that the condition occurred with regularity at the Melody Motel and was therefore foreseeable; and/or MELODY MOTEL, INC. should have known of the dangerous condition or peril by conducting proper and reasonable

inspection of the hotel premises and/or guests' conduct.

224.    Because sex trafficking and associated conduct was foreseeable, MELODY MOTEL, INC. had a duty to take adequate measures at the Melody Motel to protect their guests, including Plaintiff S.M., from being victims of continued sex trafficking.

225.    At all times material, MELODY MOTEL, INC., by and through their agents, servants, and/or employees, created and/or allowed the dangerous condition to exist at the Melody Motel and/or failed to keep the Plaintiff S.M. safe while she was on the premises of the Melody Motel.

226.    MELODY MOTEL, INC. could have taken any number of corrective measures to make the dangerous conditions at the Melody Motel ceased, including but not limited to not accepting payments of any kind for criminal activity, not renting rooms to known criminals or for criminal activity, not setting up the rooms to promote commercial sexual activity, not allowing buyers of sex to enter the premise,  providing training regarding human trafficking awareness to employees, to include for how to identify individuals who may be traffickers or their victims, establishing, implementing and/or enforcing protocols on reporting suspected human trafficking and responding to situations involving human trafficking; and establishing, implementing and/or enforcing protocols on how to handle general emergency situations or manage criminal risks.

227.    In failing to take any measures to report and remove the dangerous condition from the premises, MELODY MOTEL, INC. failed to take reasonable care to protect Plaintiff S.M., their hotel guest.

228.    By opening allowing Trafficker 1 to have his victim, S.M. "walk the trail" to solicit clients directly in front of the Melody Motel, demanding payment of the "date fee" for each

34

sex buyer that entered the premise, and allowing Trafficker 1 to openly and freely beat S.M., MELODY MOTEL, INC. encouraged the use of the premise for criminal activity such as sex trafficking.

229.   Accordingly, MELODY MOTEL, INC.'s actions and failures allowed the sex trafficking culture to flourish and the premise became a sanctuary for such activity.

230.   MELODY MOTEL, INC., by and through its agents, employees and/or servants breached its respective duty owed to the Plaintiff S.M., and was negligent by:

   a.   Creating a dangerous condition;

   b.   Failing to correct the aforementioned dangerous condition;

   c.   Failing to report and refuse renting to the traffickers;

   d.   Failing to properly and adequately maintain the premises in a reasonably safe condition;

   e.   Failing to monitor and prevent their staff and agents from conducting and engaging in illegal sex and drug trafficking;

   f.   Failing to have security measures to protect the Plaintiff;

   g.   Failing to provide training regarding human trafficking awareness to employees and staff,

   h.   Failing to provide training to employees on how to identify individuals who may be traffickers or their victims of trafficking;

   i.   Failing to establish, implement or enforce protocols on reporting suspected human trafficking and responding to situations involving human trafficking;

   j.   Failing to establish, implement or enforce protocols on how to handle general emergency situations or manage criminal risks; and

k. Failing to take affirmative steps to investigate suspicious conduct and forbid criminal conduct.

231. As a direct and proximate cause of the foregoing, S.M. was injured by Defendant's actions and has suffered psychological, emotional, and physical injuries, emotional distress, mental anguish, pain and suffering and the loss of enjoyment of life.

WHEREFORE, Plaintiff S.M. demands judgment from Defendant, MELODY MOTEL, INC, for all available damages and costs of this action.  Plaintiff, S.M., further demands a jury trial on all issues.

## COUNT X
### VICARIOUS LIABILITY
*(S.H. v. The Melody Motel)*

232. Plaintiff S.H. realleges and incorporates by reference the allegations contained in paragraphs 1-108, as if fully set forth in this Count.

233. At all times material to this complaint, the Plaintiff S.H., while an invitee or otherwise lawfully present upon the premises of the Melody Motel, did sustain injuries as a result of MELODY MOTEL, INC.'s actions, their respective patrons and the criminal activity carried on at the Melody Motel.

234. MELODY MOTEL, INC. is vicariously liable for the negligent acts and omissions of its agents, servants, representatives, employees, and/or contractors.

235. At all times material hereto, MELODY MOTEL, INC., employed Candy Bell.

236. At all times material hereto, MELODY MOTEL, INC., employed Marvin Bell.

237. MELODY MOTEL, INC., by and through its agents, employees and/or servants, owed a duty to maintain the subject premises in a reasonably safe condition and free from conditions that would render it dangerous and unsafe for Plaintiff S.H.

36

238.   MELODY MOTEL, INC. by and through its agents, employees and/or servants, owed a duty to exercise reasonable care to protect Plaintiff S.H., by inspection or other affirmative acts, from the danger of any reasonably foreseeable harm occurring from the reasonably foreseeable use of the premises by sex traffickers.

239.   MELODY MOTEL, INC., by and through its agents, servants and/or employees owed a duty to exercise reasonable care to keep its motel guests safe by implementing and enforcing security measures and proper protocols.

240.   MELODY MOTEL, INC., by and through its agents, servants and/or employees, owed a duty to safeguard S.H. against criminal conduct that MELODY MOTEL, INC. could reasonably foresee happening on their business premises.

241.   MELODY MOTEL, INC., by and through their agents, servants and/or employees, owed a duty to maintain their entire hotel premises in a hospitable, safe and reasonable manner.

242.   MELODY MOTEL, INC. had actual or constructive knowledge of prior similar sex trafficking incidents carried out at this property.

243.   MELODY MOTEL, INC. knew or should have known, in light of all the attendant circumstances stated herein, that the risk of such criminal conduct taking place at the Melody Motel would be unreasonably high without MELODY MOTEL, INC. taking appropriate security precautions against such conduct as well as protocols for reporting and refusing such conduct.

244.   MELODY MOTEL, INC. had actual knowledge of the dangerous condition Plaintiff S.M. was in at the Melody Motel, or in the alternative, that the dangerous condition existed for a sufficient length of time that MELODY MOTEL, INC. should have

exercised ordinary care, should have known of the conditions, thereby had constructive knowledge of Plaintiff S.M.'s peril; and/or that the condition occurred with regularity at the Melody Motel and was therefore foreseeable; and/or MELODY MOTEL, INC. should have known of the dangerous condition or peril by conducting proper and reasonable inspection of the hotel premises and/or guests' conduct.

245.   Because sex trafficking and associated conduct was foreseeable, MELODY MOTEL, INC. had a duty to take adequate measures at the Melody Motel to protect their guests, including Plaintiff S.H., from being victims of continued sex trafficking.

246.   At all times material, MELODY MOTEL, INC., by and through their agents, servants, and/or employees, created and/or allowed the dangerous condition to exist at the Melody Motel and/or failed to keep the Plaintiff S.H. safe while she was on the premises of the Melody Motel.

247.   MELODY MOTEL, INC. could have taken any number of corrective measures to make the dangerous conditions at the Melody Motel ceased, including but not limited to not accepting payments of any kind for criminal activity, not renting rooms to known criminals or for criminal activity, not setting up the rooms to promote commercial sexual activity, not allowing buyers of sex to enter the premise,  providing training regarding human trafficking awareness to employees, to include for how to identify individuals who may be traffickers or their victims, establishing, implementing and/or enforcing protocols on reporting suspected human trafficking and responding to situations involving human trafficking; and establishing, implementing and/or enforcing protocols on how to handle general emergency situations or manage criminal risks.

248.   In failing to take any measures to report and remove the dangerous condition from

the premises, MELODY MOTEL, INC. failed to take reasonable care to protect Plaintiff S.H., their hotel guest.

249.   By opening allowing Trafficker 2 and 3 to have his victim, S.H. "walk the trail" to solicit clients directly in front of the Melody Motel, demanding payment of the "date fee" for each sex buyer that entered the premise, and allowing Trafficker 2 and 3 to openly and freely beat S.H., the Melody Motel encouraged the use of the premise for criminal activity such as sex trafficking.

250.   Accordingly, MELODY MOTEL, INC.'s actions and failures allowed the sex trafficking culture to flourish and the premise became a sanctuary for such activity.

251.   MELODY MOTEL, INC., by and through its agents, employees and/or servants breached its respective duty owed to the Plaintiff S.H., and was negligent by:

     a.   Creating a dangerous condition;

     b.   Failing to correct the aforementioned dangerous condition;

     c.   Failing to report and refuse renting to the traffickers;

     d.   Failing to properly and adequately maintain the premises in a reasonably safe condition;

     e.   Failing to monitor and prevent their staff and agents from conducting and engaging in illegal sex and drug trafficking;

     f.   Failing to have security measures to protect the Plaintiff;

     g.   Failing to provide training regarding human trafficking awareness to employees and staff,

     h.   Failing to provide training to employees on how to identify individuals who may be traffickers or their victims of trafficking;

i.   Failing to establish, implement or enforce protocols on reporting suspected human trafficking and responding to situations involving human trafficking;

j.   Failing to establish, implement or enforce protocols on how to handle general emergency situations or manage criminal risks; and

k.   Failing to take affirmative steps to investigate suspicious conduct and forbid criminal conduct.

252.   As a direct and proximate cause of the foregoing, S.H. was injured by Defendant's actions and has suffered psychological, emotional, and physical injuries, emotional distress, mental anguish, pain and suffering and the loss of enjoyment of life.

WHEREFORE, Plaintiff S.H. demands judgment from Defendant, MELODY MOTEL, INC, for all available damages and costs of this action.  Plaintiff, S.H., further demands a jury trial on all issues.

## DEMAND FOR JURY TRIAL

The Plaintiff demands a trial by jury, of all so triable issues, pursuant to Fla. R. Civ. P. 1.430.

## CERTIFICATE RE: E-FILING AND E-SERVICE

**I HEREBY CERTIFY** that this Complaint was filed electronically in compliance with Florida Rules of Judicial Administration 2.515 and 2.516(e).

**I FURTHER CERTIFY** for purposes of service of any documents after initial process that for Attorney Lisa Haba of The Haba Law Firm, P.A., lisahaba@habalaw.com is the primary designated e-mail address and legalassistant@habalaw.com is the secondary designated e-mail address.

**I FURTHER CERTIFY** for purposes of service of any documents after initial process

that for Attorney Shannon Snedaker of Snedaker Law, shannon@snedakerlaw.com is the primary designated e-mail address and adrianne@snedakerlaw.com is the secondary designated e-mail address.

Date: March 13, 2024,                    Respectfully Submitted,

**Lisa D. Haba**
FBN: 077535
The Haba Law Firm, P.A.
1220 Commerce Park Dr., Ste. 207
Longwood, FL 32779
T: (844) 422-2529
E-mail: lisahaba@habalaw.com

**Shannon Snedaker**
FBN: 028042
Snedaker Law Firm
142 W Lakeview Ave #2040
Lake Mary, FL 32746
T: (407) 553-3529
E-mail: shannon@snedakerlaw.com
*Attorneys for Plaintiff*